AO 106 (Rev. 12/03) Affidavit for Search Warrant


FILED
APR 17 2015
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

# United States District Court

__**EASTERN**__ District of __**CALIFORNIA**__

In the Matter of the Search of

(Name, address or brief description of person, property or premises to be searched)

1) iPhone 6, Model A1522, IMEI 3543890629941312;
2) GPS Navigation System (Part Number 05064401AE) manufacturer-installed in the 2010 Grand Cherokee SRT8 (CA 7HVN797, VIN 1J4RR7GW5AC133850)

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER:

**2:15 - SW - 0185    CKD**

I, Trang N. Le, being duly sworn depose and say:

I am a Special Agent and have reason to believe that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location):

iPhone 6, Model A1522, IMEI 3543890629941312;    2) GPS Navigation System (Part Number 05064401AE) manufacturer-installed in the 2010 Grand Cherokee SRT8 (CA 7HVN797, VIN 1J4RR7GW5AC133850)

in the __**EASTERN**__ District of __**CALIFORNIA**__
there is now concealed a certain person or property, namely (describe the person or property to be seized)

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

which is (state one or more bases for search and seizure set forth under Rule 41(b) of THE Federal Rules of Criminal Procedure)
**property that constitutes evidence, fruits, and/or instrumentality of a criminal offense**

concerning a violation of Title 21 United States Code, Sections 841(a) and 846 and 843(b).

The facts to support a finding of probable cause are as follows:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

Continued on the attached sheet and made a part hereof.    ☒ Yes ☐ No

_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

__4/17/2015__ at __Sacramento, California__
Date                          City    State

_____
Signature of Judge

Carolyn K. Delaney, U.S. Magistrate Judge

1 | BENJAMIN B. WAGNER
  | United States Attorney
2 | JILL M. THOMAS
  | AMANDA BECK
3 | Assistant United States Attorneys
  | 501 I Street, Suite 10-100
4 | Sacramento, CA 95814
  | Telephone: (916) 554-2700
5 | Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| In the Matter of the Search of: | CASE NO. |
|---|---|
| iPhone 6, Model A1522, IMEI 3543890629941312; 2) GPS Navigation System (Part Number 05064401AE) manufacturer-installed in the 2010 Grand Cherokee SRT8 (CA 7HVN797, VIN 1J4RR7GW5AC133850) | AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH DEVICES |

1.   I, Trang N. Le, being first duly sworn, hereby depose and state as follows:

**I.   INTRODUCTION AND AGENT BACKGROUND**

2.   I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession and at a towing and storage facility, and the extraction from that property of electronically stored information described in Attachment B.

3.   I am a Special Agent with the Drug Enforcement Administration, and have been since December 2005. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I am currently employed as a Special Agent (hereafter SA) of the United States Department of Justice, Drug Enforcement Administration (hereafter DEA) and have

AFFIDAVIT                                    1

been so employed since 2005. I was assigned to the DEA San Francisco Field Division from December 2005 through January 2009; from January 2009 through July 2012 I was assigned to the San Jose Resident Office; and I have been assigned to the Sacramento District office since July 2012. I have received formal training at the Drug Enforcement Administration Basic Agent Training, Quantico, Virginia. The sixteen-week DEA Basic Academy included several hundred hours of comprehensive, formalized instruction in, but not limited to, basic narcotic investigations, drug identification, detection, interdiction, familiarization with United States narcotic laws, financial investigations and money laundering, identification and seizure of drug- related assets, and undercover operations. I have also completed the Internet Telecommunications Exploitation Program, a three-day course in San Francisco, California, which covered, among other subjects, use of advanced internet search engines in investigations, the detection of structured bank account deposits (designed to evade currency transaction reporting requirements), and the use of dummy corporations to hide income. In the course of my work as a DEA Special Agent, I have participated in over ten controlled substance investigations and have personally been involved in the arrest of over ten persons for controlled substance offenses. I have participated in investigations of traffickers in heroin, methamphetamine and cocaine. I have worked in an undercover capacity and have successfully purchased heroin on two occasions. I have also participated in numerous investigations that have involved the use of confidential informants, wire and physical surveillance, telephone toll analysis, investigative interviews, and the service of search and arrest warrants. As a result, I have encountered and become familiar with the various tools, methods, trends, paraphernalia, and related articles used by traffickers and trafficking organizations in their efforts to import, conceal, manufacture, and distribute controlled substances. I have been involved in the execution of approximately 20 state and federal narcotics-related search warrants. As a result, I have encountered and become familiar with the various tools, methods, trends, paraphernalia, and related articles used by drug traffickers and trafficking organizations in their efforts to import, conceal, manufacture, and distribute controlled substances. I am familiar with the appearance of controlled substances, including heroin, cocaine, methamphetamine, marijuana, and MDMA. I am familiar with and aware of the terminology used by narcotics traffickers concerning narcotics and narcotics dealing in particular, to the use of wireless communication technologies such as cellular telephones. I have also

had discussions with other law enforcement officers and cooperating individuals about the packaging and preparation of narcotics, methods of operation, and security measures which are often employed by narcotics traffickers. I have examined documentation of various methods in which illicit drugs are smuggled, transported, and distributed. Through these investigations, I have gained expertise in the use of a variety of law enforcement techniques, including the application and utilization of wire and electronic interceptions, the utilization of confidential sources and undercover agents, the use of physical surveillance techniques, and various other types of electronic surveillance techniques, such as body wires and transmitters. Additionally, I have gained knowledge and expertise in the utilization of pen register and trap and trace devices; telephone toll analysis; the analysis of traditional types of records, including financial records, telephone records, and utility records; and nontraditional records, including records routinely maintained by narcotics traffickers listing amounts of drugs delivered and amounts of money owed (pay-and-owe sheets). I have also gained knowledge and expertise in the collection and identification of drug evidence and the analysis and interpretation of taped conversations obtained by the methods detailed above. The conclusions and opinions set forth below are based on my experience and training as a Special Agent, my direct participation in this investigation as described below, and conversations with other law enforcement officers who are familiar with the facts and circumstances of this investigation.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## II. IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5. The property to be searched are: 1) iPhone 6, Model A1522, IMEI 3543890629941312; 2) GPS Navigation System (Part Number 05064401AE) manufacturer-installed in the 2010 Grand Cherokee SRT8 (CA 7HVN797, VIN 1J4RR7GW5AC133850), hereinafter the "Devices."

6. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## III. PROBABLE CAUSE

7. On Thursday, April 9, 2015, Special Agent Brett Letendre, who is California Department of Justice and a member of the Siskiyou County Inter-Agency Narcotics Task Force, contacted DEA

AFFIDAVIT 3

Special Agent Dennis Hale to request assistance in an investigation of Juana IBARRA. Special Agent Letendre related that IBARRA was in custody because California Highway Patrol (CHP) officers had seized two packages from a vehicle she had been driving. These packages had contained heroin and weighed a total of about two kilograms.

8. Special Agent Letendre further relayed to Special Agent Hale that CHP Officer Mike Yates was the arresting officer and could provide further details. Special Agent Letendre also said that Agent James Claire, also with the Siskiyou County Inter-agency Narcotics Task Force, had interviewed IBARRA. Special Agent Hale contacted Officer Yates and requested for a brief summary of his investigation thus far. Officer Yates relayed the following events:

9. On Thursday, April 9, 2015, at about 4:15 p.m., Officer Yates was on duty in his marked CHP patrol vehicle. Officer Yates was stationary and facing south, which allowed him to monitor traffic traveling north on Interstate 5. He was north of Yreka and in Siskiyou County, part of the Eastern District of California. Officer Yates observed a silver Jeep as it travelled north on the interstate. He noticed that the Jeep was violating California Vehicle Code § 22349(a). Although the posted speed limit in this area was 65 miles per hour, the vehicle was travelling at approximately 81 miles per hour. Officer Yates pulled into the flow of traffic and caught up to the vehicle. He activated his patrol vehicle emergency lights and initiated a traffic stop. The vehicle immediately yielded, pulled to the right shoulder of the interstate, and stopped.

10. Officer Yates got out of his vehicle and approached the vehicle on the passenger side. Officer Yates contacted the driver and positively identified her through her valid California State Driver's License as Juana IBARRA. IBARRA was the only person in the car. During the initial contact, Officer Yates smelled the odor of marijuana coming from within the vehicle. He asked IBARRA to step out of the vehicle to talk with him. During their conversation, IBARRA told Officer Yates she was traveling to Portland, Oregon, to attend a wedding. Officer Yates noticed that IBARRA was becoming increasingly nervous and began to physically shake and tremble. At one point during the conversation, IBARRA appeared as though she was going to vomit. Officer Yates then asked IBARRA about the contents of her vehicle. He asked if anyone had packed the vehicle for her, to which she said no. He also asked if anyone could have put anything in her vehicle without her knowledge, to which she

also said no. He went on to ask if the vehicle contained anything illegal. She said the vehicle contained an apple that she had used to smoke marijuana. Officer Yates asked for consent to search the vehicle, which IBARRA provided. She read and signed a written consent form. As IBARRA signed the consent form, Officer Yates noticed that CHP Officer Paul Shadwell had arrived to assist. Officer Yates began a search of the vehicle. He found some marijuana in a pill bottle in the back of the driver's seat. He also found one suitcase in the Jeep. Officer Yates opened the suitcase and found that it contained female clothing. One item was a pair of pants, which seemed to be about IBARRA's size. Examining the pants, Officer Yates found that one of the pant legs contained a package wrapped in plastic.

11. This package was later found to weigh about one kilogram. Its plastic also contained an unidentified clear grease. Based on his training and experience, Officer Yates knew that drug traffickers sometimes use a combination of grease and plastic to prevent police dogs from detecting controlled substances. Because of this, Officer Yates believed that IBARRA's package contained contraband. He ceased his search and took IBARRA into custody. The CHP officers then drove the Jeep to their office for further inspection. They continued to search the vehicle and found a second package in the suitcase. That package was also found inside the leg of another pair of pants. It also weighed approximately one kilogram. A field test was later conducted on the packages, which tested positive for the presence of heroin. The packages were weighed and determined to weigh approximately one kilogram each, totaling approximately two kilograms. CHP officers also located and seized an iPhone (subsequently determined to be the iPhone 6 described herein) on the passenger seat. Agent James Claire responded to the CHP office to assist with the investigation. He conducted an interview with IBARRA. According to the property receipt, IBARRA seemingly claimed the iPhone by signing off on the receipt. No other phone was found in the vehicle or on IBARRA's person. She said that she had obtained the packages in Indio, California, from a woman named Maria. IBARRA went on to say that Maria told her the packages contained marijuana and that she was to transport the packages to Sacramento. Maria put the packages into IBARRA's suitcase and gave IBARRA a phone number to call once she reached Sacramento where she would be given further directions. IBARRA said she was to be paid $1,500.00 for the delivery. IBARRA was not comfortable describing how she came to know Maria but said she did so through a friend of a friend. IBARRA said that, when she passed through Stockton, she called the number, but

AFFIDAVIT         5

nobody answered the phone. She continued through Sacramento and proceeded toward Portland until she was stopped by CHP. IBARRA was transported to the Siskiyou County Sheriff's Office jail facility. CHP officers charged her with violating California Penal Code § 11351, possessing a controlled substance with the intent to distribute it, and California Penal Code § 11352, transporting a controlled substance.

12. IBARRA has since been charged by federal criminal complaint for possession of heroin with intent to distribute. Based on my training and experience as a DEA Special Agent, and upon the shared experience of other agents and officers with whom I have worked, I am aware that it is a common practice for individuals involved in trafficking of narcotics to rely on the use of telephones, and particularly cellular telephones to distribute narcotics. I also know that it is common for those involved in narcotics trafficking to communicate, often by cellphone, with other known and unknown suppliers and distributors. Based on my training and experience as a DEA Special Agent, and upon the shared experience of other agents and officers with whom I have worked, I am aware that drug couriers who have large loads of narcotics want to transport their narcotics as quickly as possible. Often they must transport the drugs over long distances. (In this case, IBARRA appears to have been coming from the Los Angeles area and heading toward Oregon.) Drug couriers sometimes use GPS devices to help them navigate more efficiently, especially if the courier is travelling toward/to unfamiliar locations. I am aware that GPS devices may contain addresses entered by the user. They may also contain other data, such as date and time stamps, a log of GPS coordinates for recent trips, and other contextual data. All of that data would be useful in determining the route that IBARRA had travelled and her intended destination or destinations.

13. The iPhone 6 is currently in the possession of the Drug Enforcement Administration. It came into the Drug Enforcement Administration's possession in the following way: On April 9, 2015, the iPhone 6 was taken into CHP custody, pursuant to the arrest of IBARRA, and after officers located the iPhone on the passenger seat of IBARRA's vehicle. On April 13, 2015, Special Agent Letendre transferred custody of the iPhone 6 to Special Agent Hale, as witnessed by SA Trang Le.

14. The GPS Navigation System (Part Number 05064401AE) remains installed in the 2010 Grand Cherokee SRT8 (CA 7HVN797, VIN 1J4RR7GW5AC133850) and the vehicle is in the custody

at Bruce's Towing, 310 Greenhorn Road, Yreka, CA. On April 15, 2015, Special Agent Le contacted a technician in the Parts Department at the Sacramento Chrysler Dodge Jeep Ram dealership in Sacramento for information related to the GPS Navigation System in the 2010 Grand Cherokee SRT8. The technician looked up the parts information using the last eight digits of the VIN - AC133850 and informed Special Agent Le that the navigation system is associated with Part Number is 05064401AE, having the description of "Radio, AM/FM/DVD/HDD/NAV/SDARS, [RER]." The Technician also confirmed that "NAV" is the short acronym for the navigation.

## IV. TECHNICAL TERMS

15. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a) Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b) Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory

cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c) Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d) GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e) PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for

AFFIDAVIT 8

entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f)   IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static-that is, long-term-IP addresses, while other computers have dynamic-that is, frequently changed-IP addresses.

g)   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

16.  Based on my training, experience, and research, I know that the iPhone 6 has the potential capabilities that allow it to serve as a "Wireless telephone, digital camera, portable media player, GPS, IP Address, and Internet." The GPS Navigation System has the potential capabilities that allow it to serve as a location search function and travel history log. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

17.  Based on my training, experience, and research, I know that persons involved in the distribution of controlled substances often maintain at their residences, outbuildings, storage units, secondary residences, businesses, and vehicles, quantities of controlled substances, as well as paraphernalia for manufacturing, use, packaging, and distribution of controlled substances. Drug

AFFIDAVIT                                                   9

traffickers also maintain records relating to their trafficking activities in these same places. These records include pay/owe sheets, personal calendars, address/telephone books, and papers reflecting the names, addresses, pager, telephone, and fax numbers relating to their drug trafficking associates. These records can be in written form. Narcotic traffickers also keep stored messages and telephone numbers relating to their trafficking activities within phones, electronic pagers, and/or beepers.

18. Persons involved in the distribution of controlled substances often maintain records and ledgers listing their trafficking activities in these same places. These records are preserved to keep track of the ordering, purchasing, storage, distribution and transportation of controlled substances. After drugs are sold, documentary records and ledgers often remain for long periods of time to memorialize past transactions, track the status of accounts receivable and accounts payable, and to record the name and telephone numbers of suppliers, customers and co-conspirators. These records are often maintained not only on paper, but also as electronic or digital data.

19. Drug traffickers will often memorialize their criminal activities by taking photographs, negatives, video tapes, films, undeveloped film and slides depicting themselves and their criminal associates (showing association with the associates), their assets and/or firearms.

20. Individuals involved in drug trafficking use mobile telephones to communicate with customers, suppliers, and co-conspirators. Mobile telephones preserve in their memory a history of incoming, outgoing, and missed calls, which can lead to evidence of the telephone numbers of other co-conspirators and the dates and times that they and/or the mobile telephone user dialed one another's telephones. Mobile telephones also contain in their memory a telephone book. This allows the user to store telephone numbers and other contact information. The information stored in a telephone used by a drug trafficker is evidence of the associations of the drug trafficker, some of which are related to his or her illegal business. Mobile telephones also contain in their memory text messages sent, received, and drafted by the mobile telephone user. The text message history of a drug trafficker's mobile telephone can contain evidence of their illegal activities because it shows the communications or planned communications of a drug trafficker and the telephone numbers of those with whom the drug trafficker communicated or intended to communicate. Many mobile telephones also allow users to send and receive email; these emails can include communication between co-conspirators and communications

between buyers and sellers of drugs. Mobile telephones also have a voicemail function that allows callers to leave messages when the telephone user does not answer. Mobile telephones can also contain other user-entered data files such as "to-do" lists, which can provide evidence of crimes. Mobile telephones can also contain photographic data files, which can contain evidence of criminal activity; for example, where the user is a drug trafficker who took pictures of his/her drugs packaged and ready for transport. Telephone companies also store the data described in this paragraph on their own servers and associate the data with particular users' mobile telephones.

## V.    ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21.  Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

22.  <u>Forensic evidence.</u> As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

   a) Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b) Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c) A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d) The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.

Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e) Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23. <u>Nature of examination.</u> Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

<u>Manner of execution.</u> Because, in part, this warrant seeks only permission to examine the iPhone 6 already in law enforcement's possession, the execution of this warrant as it pertains to the iPhone 6 does not involve the physical intrusion onto premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant as it pertains to the iPhone 6 at any time in the day or night. Regarding the GPS Navigation System, law enforcement intends to serve the warrant on Bruce's Towing to gain access to the vehicle's internal GPS Navigation system to conduct the search and seizure of the device pursuant to this warrant.[1]

///
///
///
///

---

[1] On April 17, 2015, DEA SA Trang Le contacted Bruce's Towing. SA Le spoke with Patience Dutra, one of the owners of Bruce's Towing. Ms. Dutra provided verbal telephonic consent for law enforcement to enter the premises of Bruce's Towing. Ms. Dutra also provided verbal telephonic consent for law enforcement to access/enter the Grand Cherokee and she will provide a key to the vehicle if Bruce's Towing has the key.

AFFIDAVIT                                                            12

## VI. CONCLUSION

24. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*[signature]*

Trang N. Le
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on: 4/17/2015

*[signature]*

The Honorable Carolyn K. Delaney
UNITED STATES MAGISTRATE JUDGE

*[signature]* 4/17/15

Approved as to form by AUSA JILL M. THOMAS

AFFIDAVIT                                13

## ATTACHMENT A

The property to be searched:

1. iPhone 6, Model A1522, IMEI 354389062994 1312;     2) GPS Navigation System (Part Number 05064401AE) manufacturer-installed in the 2010 Grand Cherokee SRT8 (CA 7HVN797, VIN 1J4RR7GW5AC133850) The iPhone 6 device is currently located in the Custody of DEA-Sacramento and the Grand Cherokee SRT8 including the manufacturer-installed GPS Navigation System is currently located in the custody of Bruce's Towing, 310 Greenhorn Road, Yreka, CA.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1. All records on the Devices described in Attachment A that relate to violations of 21 U.S.C. Section 846, 841(a)(1), and 843(b), including:

   2. For the cellphone:

      a. Any and all names, words, telephone numbers, email addresses, time/date information, messages or electronic date in the memory of the mobile telephone or on a served and associated with the mobile telephone and described as: i. Incoming call history; ii. Outgoing call history; iii. Missed call history; iv. Outgoing text messages; v. Incoming text messages; vi. Draft text messages; vii. Telephone book; viii. Data screen or file identifying the telephone number associated with the mobile telephone searched; ix. Dates screen, file, or writing containing serial numbers or other information to identify the mobile phone searched; x. Voicemail; xi. Email; xii. User-entered messages (such as to-do lists); xiii. Photographs; xiv. Videos; and xv. Audio files.

   3. For the GPS Navigation system (Part Number 05064401AE) installed in the 2010 Grand Cherokee SRT8 (CA 7HVN797, VIN 1J4RR7GW5AC133850):

      All location data potentially relevant to determining the route that Juana IBARRA had travelled and her intended destination or destinations, including:

      a. Addresses entered by the user,
      b. Date and time stamps,
      c. Logs of GPS coordinates, and
      d. Other contextual data (including names, addresses, phone numbers, or any other identifying information).

   4. For both devices

      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, addresses, phonebooks, saved usernames and passwords, documents, and browsing/usage history.

AO 93 (Rev. 12/03) Search Warrant

# United States District Court

__EASTERN__ District of __CALIFORNIA__

In the Matter of the Search of

(Name, address or brief description of person, property or premises to be searched)

1) iPhone 6, Model A1522, IMEI 3543890629941312;

2) GPS Navigation System (Part Number 05064401AE) manufacturer-installed in the 2010 Grand Cherokee SRT8 (CA 7HVN797, VIN 1J4RR7GW5AC133850)

**SEARCH WARRANT**

CASE NUMBER:

2:15-SW-0185 CKD

TO, Trang N. Le and any Authorized Officer of the United States

Affidavit(s) having been made before me by Trang N. Le who has reason to believe

that ☐ on the person of, or ☒ on the premises known as (name, description and/or location)

**SEE ATTACHMENT A, attached hereto and incorporated by reference**

in the __EASTERN__ District of __CALIFORNIA__ there is now concealed a certain person or property, namely (describe the person or property to be seized)

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

I am satisfied that the affidavit(s) and any record testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before __5/1/2015__
Date

(not to exceed 14 days) the person or place named above for the person or property specified, serving this warrant and making the search ☐ in the daytime — 6:00 AM to 10:00 P.M. ☒ at any time in the day or night as I find reasonable cause has been established and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to any authorized U.S. Magistrate Judge in the Eastern District of California, as required by law.
U.S. Magistrate Judge (Rule 41(f)(4))

__4/17/2015  3:08 pm__ at  Sacramento, California
Date and Time Issued                City and State

_Carolyn Delaney_
Signature of Judge

Carolyn K. Delaney, U.S. Magistrate Judge

AO 93 (Rev. 12-03) Search Warrant (Reverse)

| RETURN | | Case Number: |
|---|---|---|
| DATE WARRANT RECEIVED | DATE AND TIME WARRANT RECEIVED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |

INVENTORY MADE IN THE PRESENCE OF

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

## CERTIFICATION

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

Subscribed, sworn to, and returned before me this date.

Signature of Judge                                    Date